UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RITTVO INVESTMENT FUND LLC 4, et al.,<br><br>Plaintiffs<br><br>v.<br><br>POMP & WHIMSY, INC., et al.,<br><br>Defendants | Case No.: 2:23-cv-00240-APG-DJA<br><br>**Order Granting Plaintiffs' Motion for Summary Judgment and Denying Defendants' Motion for Partial Summary Judgment**<br><br>[ECF Nos. 24, 26] |

Plaintiffs Rittvo Investment Fund LLC 4 (Rittvo 4), Rittvo Investment Fund LLC 3 (Rittvo 3), Gastwirth Family Trust (Gastwirth), and Jason M. Gastwirth as trustee of the Gastwirth Family Trust (collectively, Rittvo) sue defendants Pomp & Whimsey, Inc. (Pomp), Nicola Nice, Todd Gallopo, and Nori-Ann De La Cruz for breach of a line of credit agreement and related personal guarantees. Rittvo moves for summary judgment, arguing there is no genuine dispute that Pomp breached the line of credit agreement. Rittvo also argues that there is no genuine dispute that Nice, Gallopo, and De La Crus (collectively, the guarantors) are jointly and severally liable under two separate guarantees up to the combined guaranty limits of $212,500.00.

Pomp opposes, arguing that a reasonable jury could find that Pomp's performance was excused under the doctrines of impossibility or impracticability. The guarantors also oppose and move for summary judgment in their favor, arguing that the second guaranty replaced the first one, so their total liability is capped at $150,000.00.

The parties are familiar with the facts, so I repeat them here only as necessary to resolve the motions. The parties agree that Nevada law governs the substantive issues in dispute in this case. ECF Nos. 24 at 11; 26 at 2; 28 at 6. I grant the plaintiffs' motion and deny the defendants' motion.

**I. ANALYSIS**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

**A. Pomp's Line of Credit Agreement**

In July 2021, Pomp entered into a line of credit agreement (LOC) with Gastwirth and Rittvo 3. ECF No. 24-1. Under that agreement, Gastwirth and Rittvo 3 agreed to establish a $250,000.00 line of credit for Pomp "for the purposes of (a) fulfilling executed purchase orders

from [Pomp's] customers and (b) establishing a reasonable level of on-hand inventory to meet anticipated demand from [Pomp's] customers." *Id.* at 1. The original LOC had a maturity date of December 31, 2022, unless the date was extended or was accelerated through a default. *Id.* at 3. If Pomp failed to timely pay principal or interest, and failed to cure that default, then Pomp could accelerate the maturity date "and require that all amounts outstanding . . . be immediately repaid." *Id.* On default, Pomp would be liable for outstanding principal, interest, late fees, and reasonable attorney's fees and costs incurred in enforcing the agreement. *Id.* at 2-3. In June 2022, the LOC was amended to (1) increase the line of credit to $400,000.00, (2) correct Rittvo 3 to Rittvo 4 as the lender under the LOC, (3) amend the guaranty provision (as discussed below), and (4) make various other changes not relevant to the summary judgment motions. ECF No. 24-2 at 1-2.

Pomp has admitted that it breached the LOC and amendment and owes $400,000.00 plus interest to Rittvo. ECF No. 24-3 at 6, 15, 18-19; *see also* ECF No. 24-4 at 2 (Jason Gastwirth's declaration stating that Pomp used the entire $400,000.00 credit line and has not repaid it). In its response to interrogatories, Pomp stated that its performance was excused under the doctrines of impossibility and impracticability because:

> the supply chain constraints and logistical challenges that currently exist in the global market materially affected [Pomp's] suppliers and threatened [Pomp's] access to consistent inventory. This, in turn, caused [Pomp] to need to acquire and hold more inventory than it otherwise would have under normal operations because of the risk of that inventory not being available in the future. This, in turn, placed additional financial constraints on the company.

ECF No. 28-1 at 8-9. The interrogatory responses are signed under penalty of perjury by Nice as Pomp's chief executive officer. *Id.* at 15.

The plaintiffs contend that Pomp has not identified what the supply chain constraints were, when those occurred, what suppliers or materials Pomp either could not obtain or over-acquired, or what financial constraints this had on Pomp. The plaintiffs argue that Pomp's interrogatory response shows it made a poor business decision to over-acquire inventory, not that performance was impossible or impracticable. The plaintiffs also assert that impossibility requires there to be unforeseen circumstances, but at the time the parties agreed to the LOC and the amendment, the pandemic and related economic challenges were well known.

Under Nevada law, performance is excused "if the promisor's performance is made impossible or highly impractical by the occurrence of unforeseen contingencies." *Helms Constr. & Dev. Co. v. State, ex rel. Dep't of Highways*, 634 P.2d 1224, 1225 (Nev. 1981) (quotation omitted). However, "if the unforeseen contingency is one which the promisor should have foreseen, and for which he should have provided, this defense is unavailable to him." *Id.* (quotation omitted).

Pomp requests that I take judicial notice of "the global supply chain crisis as an adjudicative fact that is both generally know and can be accurately and readily determined." ECF No. 28 at 7 n.1; *see also* Fed. R. Evid. 201(b). Even if I took judicial notice of global supply chain issues generally due to the pandemic, that does not aid Pomp. Pomp presents no evidence of what items it was having trouble sourcing such that it decided to over-acquire or whether that was due to global supply chain issues or other reasons. Pomp has presented no evidence beyond its interrogatory response to support its contention that its over-ordering placed financial constraints on the company. Pomp's conclusory interrogatory response, with no detailed facts and no supporting evidence, does not create an issue of fact. *See F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997). Moreover, the

parties entered into the LOC in July 2021 and the amendment in June 2022. ECF Nos. 26-2; 26-3.  Pomp presents no evidence as to when the supply chain issues relevant to its business arose such that those issues would have been unforeseen at the time of contracting.  I therefore grant the plaintiffs' motion for summary judgment that Pomp breached the agreements.  Because interest and late fees continue to accrue, damages will be calculated at the time of final judgment.

### B.  Guarantors

Section 9(c) of the LOC states that the guarantors "shall . . . guarantee[]" Pomp's obligations "on a joint and several basis, pursuant to a Personal Guaranty which shall substantially be in the form of Exhibit B" to the LOC. ECF No. 24-1 at 3.  Section 9(c) caps the guarantors' liability, stating that the "aggregate liability of the Guarantors pursuant to the guaranty shall not exceed, on a joint and several basis, Sixty-Two Thousand Five Hundred Dollars." *Id.*  Exhibit B to the LOC is a personal guaranty signed by each of the guarantors. *Id.* at 7-8.  The guaranty refers to the LOC between Pomp, Gastwirth, and Rittvo 3. *Id.* at 7.  It states that "[a]s an inducement for and in consideration of" Gastwirth and Rittvo 3 entering into the LOC, the guarantors "jointly and severally personally agree[d]" to "the full and timely payment and performance of all obligations . . . under the [LOC] . . . provided however, that the aggregate liability of the Guarantors pursuant to this Personal Guaranty shall not exceed, on a joint and several basis, Sixty-Two Thousand Five Hundred Dollars (the 'Guaranty Limit')." *Id.*  The Guaranty Limit includes attorney's fees and expenses that Gastwirth and Rittvo 3 would incur to enforce the LOC or the guaranty. *Id.* at 8.

The parties amended the LOC in June 2022. ECF No. 24-2.  The amendment states that the LOC's guaranty provision "shall be modified to add an additional Personal Guaranty in the form of Exhibit C that will cover the full amount of the additional total principal outstanding that

5

exceeds Two Hundred Fifty Thousand Dollars ($250,000) . . . ." *Id.* at 1.  Additionally, if certain conditions were met, "the aggregate liability maximum amount noted in Section 9(c) shall reflect One Hundred Thousand Dollars ($100,000.00) split across the guarantor groups indicated in Exhibit B of the Agreement and Exhibit C in this First Amendment." *Id.* at 1-2.

The amendment states that to the extent the LOC and the amendment conflict, the amendment's terms control. *Id.* at 2.  The amendment also states that the parties "understood and agreed" that the amendment "shall serve as a supplement to the [LOC] and all terms, conditions and provision of the [LOC], unless specifically amended or modified herein, shall continue in full force and effect." *Id.*

Exhibit C to the amendment is a personal guaranty signed by the same guarantors. *Id.* at 4-5.  The personal guaranty refers to the LOC and the amendment and states that "[a]s an inducement for and in consideration of the execution by Lenders of the Agreements," the guarantors personally guaranteed Pomp's timely performance under both agreements "provided however, that the aggregate liability of the Guarantors pursuant to this Personal Guaranty shall not exceed, on a joint and several basis, One Hundred and Fifty Thousand Dollars (the 'Guaranty Limit')." *Id.*  As with the original guaranty, the amendment guaranty limit included attorney's fees and costs. *Id.* at 5.

The parties dispute whether the second guaranty is in addition to the first one or supplants it.  In other words, they disagree about whether the guarantors are jointly and severally liable for $150,000.00 or $212,500.00 ($62,500.00 + $150,000.00).  The plaintiffs argue that under the amendment's language, the second guaranty is an additional guaranty and that the guarantors guaranteed Pomp's obligations under both agreements.  The plaintiffs note that the second guaranty states that the limit for "this" guaranty is $150,000.00, and that shows that the two

6

guarantee limits are added together.  The guarantors respond that the second guaranty makes clear that it was given in consideration of, and guarantees Pomp's performance under, both the LOC and the amendment, so the second guaranty replaces the first one.  The guarantors argue that the word "additional" appears only in the amendment, to which they are not signatories, and does not appear in the second guaranty.

"The objective of interpreting contracts is to discern the intent of the contracting parties." *Am. First Fed. Credit Union v. Soro*, 359 P.3d 105, 106 (Nev. 2015) (en banc) (quotation omitted).  To determine that intent, I look to the contract's language "and the surrounding circumstances." *Id.* (quotation omitted).  If the contract's language is "clear and unambiguous," then I enforce it "as written." *Id.* (quotation omitted).  A contract is ambiguous if it is "susceptible to more than one reasonable interpretation." *Id.*  I construe any ambiguities against the drafter. *Id.*  I must give every word in the agreement effect if possible, and I should not interpret it in a way that would make its provisions meaningless. *Bielar v. Washoe Health Sys., Inc.*, 306 P.3d 360, 364 (Nev. 2013).

Viewing the LOC, amendment, and both guaranties by their unambiguous language, the guaranties stack on top of each other for a total guaranty limit of $212,500.00.  The amendment describes the second guaranty as an additional guaranty and that the amendment is a supplement to the LOC.  Reading the agreements as the guarantors propose would write the word "additional" out of the amendment and make that term meaningless.  The amendment also refers to the possibility that, under certain circumstances, the guaranty limit could be "split across the guarantor groups indicated in Exhibit B of the Agreement and Exhibit C in this First Amendment." ECF No. 1-2 at 1-2.  If the second guaranty replaced the first one, there would be no need to reference the first guaranty in this provision.

The guarantors argue that they did not sign the amendment, so its reference to the second guaranty being an additional one does not bind them. But in interpreting the relevant agreements, I must view the surrounding circumstances. The documents were executed together, cross-reference each other, the guarantors were personally guaranteeing Pomp's performance under the LOC and the amendment, and the guarantees were exhibits to the LOC and amendment. It therefore is appropriate to read the agreements and guarantees together. *See Coast to Coast Demolition & Crushing, Inc. v. Real Equity Pursuit, LLC*, 226 P.3d 605, 608 (Nev. 2010) ("Multiple writings signed at the same time, addressing the same subject, and cross-referencing one another may be taken to comprise a single agreement."); *Whitemaine v. Aniskovich*, 183 P.3d 137, 141 (Nev. 2008) (stating that "two instruments are presumed to be a single contract if (1) they are contemporaneously executed, (2) they concern the same subject matter, and (3) one of the instruments refers to the other"). Looking at the agreements' plain language and the circumstances surrounding the parties' agreements, the guarantors executed a second, additional guaranty. Consequently, the guaranty limit for which the guarantors are jointly and severally liable is $212,500.00. Accordingly, I grant the plaintiffs' motion for summary judgment and deny the guarantors' motion.

Although I have granted the plaintiffs' motion for summary judgment, I do not enter final judgment at this time because the plaintiffs recently amended the complaint to add alter ego allegations. ECF No. 40. This order does not address those allegations.

## II. CONCLUSION

I THEREFORE ORDER that the plaintiffs' motion for summary judgment **(ECF No. 24) is GRANTED**.

I FURTHER ORDER that the defendants' motion for summary judgment **(ECF No. 26)** **is DENIED**.

DATED this 30th day of January, 2024.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE